UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    16-CR-156-LJV-MJR
                                             REPORT, RECOMMENDATION,
                                             AND ORDER

        -v-

JAMES H. BESS, JR.,

                        Defendant.
_____

        This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo

pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon

dispositive motions.  (Dkt. No. 7).

## BACKGROUND

        On November 30, 2016, a federal grand jury in the Western District of New York

returned a three count Indictment against James H. Bess, Jr.  (*See* Dkt. No. 6).  Count

one alleges possession with intent to distribute, and distribution of, methamphetamine in

the Western District of New York on or about October 2, 2016; count two alleges

possession of methamphetamine with the intent to distribute at Stow Ferry Landing in the

Town of Harmony, New York on or about October 2, 2016; and count three alleges

possession of methamphetamine with the intent to distribute at the Red Roof Inn, Room

144 in the Town of Ellicott, New York on or about October 2, 2016.  (*See* Dkt. No. 6).

Presently before the Court are Bess' pre-trial motions:  (1) to suppress evidence; (2) for

discovery and inspection; (3) to compel disclosure of *Brady* and *Giglio* material; (4) for

notice and disclosure of evidence pursuant to Federal Rules of Evidence 404(b), 608,

and 609; (5) for disclosure of Jencks Act materials; (6) for preservation of rough notes;

and (7) for leave to file other motions.  (Dkt. No. 20 (non-dispositive motions); Dkt. No. 33 (motion to suppress evidence)).[1]  The government responded to Bess' motions and filed its own motion for reciprocal discovery.  (Dkt. No. 28).  The Court heard oral argument on all of the foregoing motions on May 9, 2018.  (Dkt. No. 47).

## DISCUSSION

The Court will address Bess' motion to suppress evidence before turning to his non-dispositive pre-trial motions and the government's motion for reciprocal discovery.

I.   *Motion to Suppress Evidence*

Bess moves to suppress:  (1) evidence seized from Room 144 of the Red Roof Inn on October 2, 2016 on the basis that he did not voluntarily consent to the search and the scope of the search exceeded his purported consent; and (2) the permission-to-search form that he signed prior to the search on the basis that he signed the form without having been read his *Miranda* rights.  The Court held an evidentiary hearing on the motion on December 7, 2017 and January 27, 2018 during which Drug Enforcement Administration Task Force Officer Daniel Forsberg and Chautauqua County Jail Correction Officer Louis Habig testified on behalf of the government.  (Dkt. Nos. 38, 40).[2]  Bess did not call any witnesses, but he did submit his own affidavit describing his arrest and the circumstances surrounding his consent to the search.  (Dkt. No. 33-1).[3]  The Court received Government Exhibits ("Gov't Exs.") 1-4 into evidence at the hearing.  (Dkt. Nos. 38, 40).  The parties thereafter filed post-hearing briefs (Dkt. Nos. 43, 44, 45), and, as already noted, appeared

---

[1]    With the Court's permission, Bess filed his motion to suppress evidence after the expiration of the pre-trial motion deadline.  (*See* Dkt. No. 34).

[2]    Transcripts of the December 7, 2017 (Dkt. No. 41) and January 27, 2018 (Dkt. No. 42) proceedings are designated as T1 and T2, respectively.

[3]    Bess also submitted two affidavits regarding his expectation of privacy in Room 144 of the Red Roof Inn.  (*See* Dkt. Nos. 46, 48).  These affidavits are discussed *infra.*

for oral argument on May 9, 2018 (Dkt. No. 47).  After considering all of the evidence, the submissions of the parties, and argument from counsel, it is recommended that Bess' motion to suppress evidence be denied in its entirety.

       A.  _Findings of Fact_

On September 30, 2016, an informant advised the Southern Tier Regional Drug Task Force that Bess had a room at a local Red Roof Inn from which he used and distributed crystal methamphetamine.  (T1: 7-10).  A second informant likewise advised the Task Force that Bess distributed crystal methamphetamine in the area.  (T1: 8).  Two days later, on October 2, 2016, the Task Force arranged to use a confidential informant and an undercover officer to purchase drugs from Bess in the Stow, New York area.  (T1: 8, 12).  Bess picked up the confidential informant and drove to Ferry Landing in Stow to meet the undercover officer, who was wearing an audio recording device.  (T1: 12-13, 21; T2: 12; Gov't Ex. 2 (audio recording of controlled buy); Gov't Ex. 4 (transcript of audio recording)).  The undercover officer joined Bess and the confidential informant in Bess' vehicle and proceeded to purchase a quantity of crystal methamphetamine from Bess.  (T1: 12-13, 21; Gov't Exs. 2, 4).  The undercover officer then left Bess' vehicle and returned to his own vehicle.  (T1: 13-14).  Six other plain-clothes officers who had been surveilling the transaction, including Task Force Officer ("TFO") Daniel Forsberg, then approached Bess' vehicle to place him under arrest.  (T1: 14, 39-40).  At least three of these officers had their firearms drawn.  (T1: 14).  One of the arresting officers, Lieutenant David Bentley, aimed his firearm (a rifle) at Bess and shouted orders at him.  (T1: 15-16, 40-41, 46; Gov't Ex. 4 at 8).  Bess complied with the orders and exited his vehicle.  (T1: 15-16, 41).  The officers then placed Bess in handcuffs and escorted him to the back of

a patrol car, holstering their weapons in the process. (T1: 15-17, 21-22). TFO Forsberg asked Bess if he wished to cooperate, meaning disclose the source of the drugs, but Bess indicated that he did not want to cooperate. (T1: 24). The officers did not read Bess his *Miranda* warnings. (T1: 41).

Bess remained in the backseat of the patrol car while the officers searched his vehicle. (T1: 22). The search uncovered a key card to a room at the Red Roof Inn and something with the key card, possibly an envelope, indicating that the key was for Room 144. (T1: 25, 28-29, 42). Approximately twenty minutes after the arrest, TFO Forsberg approached Bess about the key card and asked him "if he had anything in his hotel room that was illegal that shouldn't be there," but Bess indicated that he did not. (T1: 22, 25, 48). TFO Forsberg also asked Bess "if he'd be willing to give [the officers] permission to search his hotel room." (T1: 25). Bess verbally consented to the search, although TFO Forsberg does not recall Bess' exact words. (T1: 25, 48-49). TFO Forsberg and another officer then used a computer inside one of the patrol cars to prepare a permission-to-search form for Bess to sign. (T1: 25-26). The form states as follows:

### Permission to Search

I, James H Bess, have been informed by Inv D Forsberg and Inv M Mckillip, who have made proper identification as authorized law enforcement officers of the Chautauqua County Sheriff's Office, of my constitutional right not have [sic] a search made of the premises and property owned by me and/or under my care, custody and control, without a search warrant.

Knowing of my lawful right to refuse to consent to such a search, I willingly give my permission to the above named officer(s) to conduct a complete search of the premises and property, including all buildings and vehicles, both inside and outside of the property located at the Red Roof Inn, 1980 East Main Street, Falconer, NY Room number 144.

> The above said officer(s) further have my permission to take from my premises and property, any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation.
>
> This written permission to search without a search warrant is given by me to the above officer(s) voluntarily and without threats or promises of any kind, at 2:15 PM on 10-02-16 at the Stow Ferry Landing in Stow, NY.

(Gov't Ex. 1).

TFO Forsberg gave the form to Bess a minute after the computer had printed it out. (T1: 32). TFO Forsberg did not read the form to Bess, although he did generally advise Bess that it concerned permission to search the hotel room. (T1: 28, 44). TFO Forsberg and the other officers used a "normal" and "conversation[al] tone" of voice when speaking with Bess. (T1: 16-17). Bess, who was still handcuffed in the back of the patrol car with one officer sitting in the car and two other officers standing above him outside the car, asked for his glasses, which were provided to him. (T1: 27, 33-34, 44). TFO Forsberg then observed Bess hold the form in front of him and apparently read it. (T1: 27-28). Bess signed the form approximately one minute later without asking any questions. (*Id.*). A total of twenty-five minutes had elapsed between the time of Bess' arrest and the moment he signed the form. (T1: 43, 49). Bess remained calm and sat still during this time. (T1: 23, 47). Both his appearance and manner of speech were "normal," and he responded to the questions asked of him. (T1: 23). He did not appear intoxicated, express discomfort, or request medical attention of any kind. (*Id.*). TFO Forsberg described Bess as "cooperative." (*Id.*).

After Bess signed the permission-to-search form, TFO Forsberg drove to the Red Roof Inn, told the hotel staff who he was and what he was doing, and then proceeded to

search Room 144 with another officer, Detective Scott Korzenski.  (T1: 32, 45-46, 50).
The officers recovered two bags of methamphetamine inside Room 144.  (*See* Dkt. No.
33 ¶8).

Meanwhile, Bess was transported from Stow Ferry Landing to the Chautauqua
County Jail for booking.  (T1: 52-54).  According to Louis Habig, the primary booking
officer for the 3:00-11:00 p.m. shift at the Jail, Bess was very cooperative, did not exhibit
unusual behavior or withdrawal symptoms, and did not request immediate medical
attention, although he did indicate that he had several health issues, including high blood
pressure, a heart condition, and diabetes.  (T1: 52, 56-57, 62; Gov't Ex. 3).

The Court finds TFO Forsberg and Officer Habig to be credible witnesses.  The
Court notes that Bess' affidavit (Dkt. No. 33-1) contradicts TFO Forsberg's testimony in
certain respects,[4] but Bess did not testify at the suppression hearing and was not subject
to cross examination, and the Court thus could not form an opinion as to his credibility.
To compare, TFO Forsberg appeared forthright and truthful when testifying at the hearing.
Consequently, although the Court has considered Bess' affidavit, it has not given it much
weight.  *See United States v. Juliano*, No. 99 CR. 1197(AGS), 2000 WL 1206745, at *4
n.4 (S.D.N.Y. Aug. 24, 2000) ("[B]ecause defendant did not testify at the hearing and was
not subject to cross examination, the Court is unable to form an opinion as to defendant's
credibility.  Further, the Court finds that the agents who testified appeared forthright and
truthful.  Consequently, the Court gives little weight to defendant's assertion [in his
affidavit]."); *see also United States v. Miller*, 382 F. Supp. 2d 350, 362-63 (N.D.N.Y. 2005)

---

[4]      In particular, Bess contends that he did not verbally consent to the search and that only five minutes
elapsed between the time of his arrest and the time he signed the permission-to-search form.  (Dkt. No. 33-
1 ¶¶20-21).

("Clearly, a defendant has the right to testify at a suppression hearing, and his testimony is typically insulated because the prosecution cannot use it directly in a subsequent trial. While the court recognizes that tactical considerations may govern the defendant's decision to testify, he is nonetheless free to do so. Absent such testimony, a judge may consider the defendant's hearsay affidavit, but should give it such weight as his judgment and experience counsel. Often, weight will be influenced by whether the affidavit is contradicted by more cogent evidence, especially that which withstands the scrutiny of cross-examination.") (internal quotation marks and citations omitted).

B. *Conclusions of Law*

Bess moves to suppress: (1) evidence seized from Room 144 at the Red Roof Inn on the basis that he did not voluntarily consent to the search and the scope of the search exceeded his purported consent in that Detective Korzenski, who was not identified in the permission-to-search form, participated in the search; and (2) the permission-to-search form itself on the basis that he signed the form without having been read his *Miranda* rights. (Dkt. No. 43 (Bess' Post-Hearing Brief) at 8-13). The Court will address Bess' request to suppress evidence seized from the hotel room before turning to his request to suppress the permission-to-search form.

1. *Evidence Seized from the Hotel Room*

A defendant seeking to suppress evidence must demonstrate that he had a reasonable expectation of privacy in the location or items searched. *See Rakas v. Illinois,* 439 U.S. 128, 143 (1978). "[The] defendant must demonstrate that he *himself* exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as reasonable." *United States v. Fields*,

113 F.3d 313, 320 (2d Cir. 1997).  The defendant can meet this burden "only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." *United States v. Hemingway*, No. 05-CR-6108L, 2007 WL 499470, at *9 (W.D.N.Y. Feb. 13, 2007) (quoting *United States v. Montoya-Eschevarria,* 892 F. Supp. 104, 106 (S.D.N.Y. 1995)).  Bess has submitted two sworn affidavits regarding his reasonable expectation of privacy in Room 144.  (Dkt. Nos. 46, 48).  Thus, he has standing to challenge the search of the room.

"[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  "One such exception is a search that has been consented to by the lawful occupant of the premises." *United States v. Sanchez*, 635 F.2d 47, 58 (2d Cir. 1980).  "For such a consent to be valid, however, it must be voluntarily and freely given.  It may not be the product of duress or coercion, flagrant or subtle . . . ." *Id.*  The government bears the burden of proving by a preponderance of the evidence that the defendant's consent was in fact voluntarily given. *United States v. Isiofia*, 370 F.3d 226, 230 (2d Cir. 2004).  The government cannot meet this burden "by only showing [the defendant's] acquiescence to a claim of lawful authority." *United States v. Ruiz-Estrella*, 481 F.2d 723, 727 (2d Cir. 1973).

Voluntariness "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227.  "Relevant considerations include, but are not limited to, the age of the subject, his level of education and of intelligence, and whether he was deprived of food or sleep or subjected to other physical abuse." *Sanchez*, 635

F.2d at 58.  Where, as here, the defendant was in custody when he consented to the search, the Court must be "particularly sensitive to the heightened possibilities for coercion," *id.* (quoting *Schneckloth*, 412 U.S. at 240 n.29), "but the fact of custody alone does not mean that a consent to search was coerced," *id.*  "[W]hether guns were drawn or the consenting individual was frisked, or whether the consenting individual was threatened, was in a public area, or was informed that he had the option of refusing consent to the search," are relevant considerations when the defendant consented to the search while in custody.  *United States v. Puglisi*, 790 F.2d 240, 243-44 (2d Cir. 1986) (internal citations omitted).

Here, the record shows that Bess was fully alert and oriented at the time he consented to the search.  He acted calm, responded to the arresting officers' questions, and displayed "normal" appearance and speech.  *See United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir. 1983) (finding voluntary consent where the defendant "was resigned and calm" and had a "conversational" discussion with law enforcement).  Bess suggests that his age (he was sixty-one-years old at the time of the search), medical issues, and past drug use influenced his decision to consent to the search (*see* Dkt. No. 33-1), but the Court disagrees because the record does not indicate that Bess was mentally infirm, intoxicated, or in need of medical attention at the time of his consent.

The surrounding circumstances likewise indicate that Bess voluntarily consented to the search.  TFO Forsberg did not use trickery, coercion, deceit, or physical force to secure Bess' consent.  Although multiple officers arrested Bess at gunpoint and placed him in handcuffs, about twenty minutes passed before TFO Forsberg asked Bess for his verbal consent to search the hotel room, thus giving Bess time to collect himself and

weigh the implications of consenting to the search. *See United States v. Moreno*, 701 F.3d 64, 76-78, 80 (2d Cir. 2012) (finding voluntary consent where defendant agreed to the search fifteen minutes after armed agents made forcible entry into defendant's motel room and subdued and handcuffed defendant). Bess verbally consented to the search, leading TFO Forsberg to give Bess the permission-to-search form, which Bess signed a total of twenty-five minutes after his arrest. The permission-to-search form clearly advises Bess of his right to withhold his consent, and although TFO Forsberg did not read the form out loud to Bess, Bess asked for his glasses and seemingly read the form before signing it. *See United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988) ("Execution of a consent form is one factor that indicates that consent was voluntary."). Bess points out that the arresting officers did not *Mirandize* him prior to asking for his consent. However, "*Miranda* warnings . . . are not a prerequisite to obtaining a valid consent to search." *Moreno*, 701 F.3d at 77. In sum, based on the totality of the circumstances described above, the government has shown by a preponderance of the evidence that Bess did not acquiesce to a claim of lawful authority but rather voluntarily consented to the search of the hotel room.

Bess next argues that the scope of the search exceeded his consent because the permission-to-search form authorizes TFO Forsberg and Officer McKillip to conduct the search, but the search was actually conducted by TFO Forsberg and Detective Korzenski. "A suspect may of course delimit as he chooses the scope of the search to which he consents," *Florida v. Jimeno*, 500 U.S. 248, 252 (1991), but this principal does not limit who may participate in the search after the defendant has consented to it. Indeed, "courts have refused to find that consent is limited to a particular agency or individual, even where

a defendant signs a consent form authorizing search by a particular agency or officer."
*United States v. Elcock*, No. 2017-0005, 2017 WL 1946316, at *6 (D.V.I. May 9, 2017)
(collecting cases); *see also Hoffman v. Cty. of Delaware*, 41 F. Supp. 2d 195, 215
(N.D.N.Y. 1999) ("[A] consent may not be qualified by the number of officers allowed to
search."), *aff'd*, 205 F.3d 1323 (2d Cir. 2000). Once a defendant consents to a search of
a particular location, he no longer has an expectation of privacy in the location, and he
cannot exclude other officers from participating in the search. *See Elcock*, 2017 WL
1946316, at *7; *see also Hoffman*, 41 F. Supp. 2d at 215 ("[H]aving given consent to
Officer Lewis to enter his residence, [the suspect] no longer had any expectation of
privacy and could not limit that consent to exclude [another officer]."). Accordingly, once
Bess consented to the search of the hotel room, he no longer had an expectation of
privacy in the room, and Detective Korzenski's participation in the search did not violate
his Fourth Amendment rights.[5] It is therefore recommended that Bess' motion to
suppress evidence seized from the hotel room be denied.

## 2. *Permission-to-Search Form*

Bess also moves to suppress the permission-to-search form on the basis that he
signed the form without having been read his *Miranda* rights.[6]

As a general rule, "a request for consent to search is not an interrogation within
the meaning of *Miranda v. Arizona*[.]" *Flynn v. James*, 513 F. App'x 37, 39 (2d Cir. 2013)
(summary order). Relatedly, a suspect's "'consent to search is not evidence of a

---

[5] *Florida v. Jardines*, 569 U.S. 1 (2013), cited by Bess in his reply brief (Dkt. No. 45 at 8) is inapposite because it does not address the issue at hand in this case — namely, whether authorizing one officer to conduct a search permits a second officer to participate in the search.

[6] The Court agrees with the government's argument in its post-hearing brief (Dkt. No. 44 at 14-15) that Bess' request to suppress the permission-to-search form is untimely because he first raised the request in his post-hearing brief. The Court has nonetheless considered the merits of the request, and having done so, recommends that it be denied for the reasons set forth herein.

testimonial or communicative nature' and therefore it does not implicate the right to counsel." *Id.* (quoting *United States v. Faruolo*, 506 F.2d 490, 495 (2d Cir. 1974)). *Miranda* warnings may, however, be required when law enforcement "goes beyond a simple request to search by, for example, inquiring [into] ownership" of the property to be searched. *United States v. Barber*, 839 F. Supp. 193, 202 (W.D.N.Y. 1993). Here, Bess argues that the permission-to-search form could be construed as an inquiry into his ownership of the hotel room because it describes the room as "my premises." However, contrary to Bess' argument, the Court finds that the officers typed "my premises" in the form merely as a way to describe the location to be searched, not to inquire into Bess' control or ownership over the hotel room. Indeed, based on information the officers received from an informant and their recovery of the room key inside Bess' vehicle, the officers already knew that Bess had a hotel room at the Red Roof Inn before they even presented him with the permission-to-search form. Accordingly, the permission-to-search form did not implicate Bess' *Miranda* rights, and it is recommended that Bess' motion to suppress the form be denied.

      II.    <u>*Motion for Discovery and Inspection*</u>

Bess moves for discovery and inspection under Federal Rule of Criminal Procedure 16. (Dkt. No. 20 at 3). However, at oral argument, defense counsel acknowledged that no discovery is outstanding at this time. Therefore, Bess' motion for discovery is denied as moot. The government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

III.    _Motion to Compel Disclosure of_ Brady _and_ Giglio _Material_

Bess moves for the immediate disclosure of _Brady_[7] material and _Giglio_[8] impeachment material.  (Dkt. No. 20 at 4-6).  "[A]s a general rule, _Brady_ and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant."  _United States v. Coppa_, 267 F.3d 132, 146 (2d Cir. 2001).  "[A]s long as a defendant possesses _Brady_ evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  _Id_. at 144.  "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case."  _Id_. at 146.

The government states in this case that it "is fully aware of its obligations and responsibilities under _Brady_ and acknowledges its continuing duty under _Brady_ to produce such material, if and when it is aware of it."  (Dkt. No. 28 at 6).  With regard to _Giglio_ impeachment material, the government states that it will produce such material when it is directed to do so by the assigned District Judge.  (_Id._ at 8).  Given the government's representations, Bess' motion to compel the immediate production of _Brady/Giglio_ material is denied.  Consistent with _Coppa_, the government shall timely disclose any _Brady_ and _Giglio_ material to Bess.  _See United States v. Padovani_, No. 14-CR-00224-WMS-JJM, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

---

[7]    _Brady v. Maryland_, 373 U.S. 83 (1963).
[8]    _Giglio v. United States_, 405 U.S. 150 (1972).

IV.    _Motion for Notice and Disclosure of Evidence Pursuant to Federal Rules of Evidence 404(b), 608, and 609_

Bess moves to compel the government to notify him of any evidence it contends would be admissible under Federal Rule of Evidence 404(b) and to disclose any evidence it intends to use to impeach his credibility at trial under Federal Rules of Evidence 608 and 609. (Dkt. No. 20 at 6-7). The government states in response that it will disclose any such evidence at the time it is ordered to do so by the assigned District Judge. (Dkt. No. 28 at 4-6). Based upon the government's agreement to provide the requested evidence as directed by the assigned District Judge, Bess' motion is denied as moot. _See United States v. Wilson_, No. 15-CR-00142-EAW-MJR, 2017 WL 1456984, at *11 (W.D.N.Y. Apr. 24, 2017). The admissibility of any such evidence should also be decided by the assigned District Judge. _See id._

V.    _Motion for Disclosure of Jencks Act Materials_

Bess moves to compel the government to disclose witness statements prior to trial. (Dkt. No. 20 at 8-9). The government states in response that it will disclose such statements at least two weeks before trial or as otherwise ordered by the assigned District Judge. (Dkt. No. 28 at 9).

Under the Jencks Act, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. §3500(b). Because the Court cannot compel the government to produce the statements any earlier

-14-

than is required under §3500, *see United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974), Bess' motion for pre-trial disclosure of such statements is denied.

## VI.    *Motion for Preservation of Rough Notes*

Bess moves for an order "requiring all federal, state or local agents and officers who participated in the investigation of [him] to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records."  (Dkt. No. 20 at 9-10).  The government does not object to this request. (Dkt. No. 28 at 9).  Therefore, Bess' motion is granted, and the government is directed to preserve all rough notes.

## VII.    *Motion for Leave to File Other Motions*

Bess moves for leave to file other motions.  (Dkt. No. 20 at 10).  To the extent Bess requests permission to file other motions based upon new information or evidence that has not yet been disclosed, the request is granted.  To the extent Bess intends to file other motions concerning issues that could have been raised prior to the previous motion deadline, his request is denied without prejudice to filing the motion upon a showing of good cause for the untimely filing.

## VIII.    *Government's Motion for Reciprocal Discovery*

The government moves for reciprocal discovery under Federal Rule of Criminal Procedure 16(b).  (Dkt. No. 28 at 10).  Bess has not opposed the government's request. Therefore, the government's motion for reciprocal discovery is granted.

## **CONCLUSION**

For the foregoing reasons, it is recommended that Bess' motion to suppress evidence (Dkt. No. 33) be denied.  Bess' non-dispositive pre-trial motions (Dkt. No. 20)

are granted in part and denied in part as set forth herein.  The government's motion for reciprocal discovery (Dkt. No. 28) is granted.  Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report, Recommendation, and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation, and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation, and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation, and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance.  *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection***.

**SO ORDERED**.

Dated:       May 14, 2018
             Buffalo, New York

                                    /s/ Michael J. Roemer
                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge